'IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANNITRE EDISON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 20-CV-2484 |
| | ) | |
| v. | ) | JURY TRIAL DEMAND |
| | ) | |
| TYSON FOODS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Now comes Plaintiff, Annitre Edison (hereinafter, "Edison" or "Plaintiff"), by and through her attorneys, Jaz Park and Richard J. Gonzalez, of The Law Offices of Chicago-Kent College of Law, and for her Complaint against Defendant, Tyson Foods, Inc., (hereinafter, "Tyson" or "Defendant"), states as follows:

## NATURE OF THE ACTION

1. This is an action for damages and equitable relief related to Plaintiff's employment with Tyson Foods, Inc. to redress Defendant's violation of Plaintiff's rights guaranteed under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) et seq.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is invoked pursuant to the provisions of 42 U.S.C.§ 2000(e)-5 and 28 U.S.C. § 1331.

3. Venue is appropriate in this judicial district under 28 U.S.C. § 1391(b) because Defendant's place of business is in this judicial district, and a substantial amount of the events giving rise to this Complaint occurred herein.

4. Plaintiff has met all administrative prerequisites to the suit in that she timely filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") on September 10, 2019. Plaintiff is eligible to file the complaint 90 days following the date of the issuance of the Right to Sue on February 7, 2020, and file this complaint within the limitation of 42 U.S.C. § 2000(e) et seq. (See Exhibit A)

## PARTIES

5. Plaintiff was born on March 5, 1975, and is a female citizen of the United States of America who resided within this judicial district. For a period of time in the excess of sixteen years, Plaintiff was employed by the Defendant, with her most recent position as a Senior Director of Information Technology.

6. Defendant Tyson Foods, Inc. is a multinational food processing corporation, with one of its corporate offices located in Chicago, Illinois. At all relevant times, Defendant was an employer pursuant to Title VII.

## FACTS COMMON TO ALL COUNTS

7. In January 2003, Plaintiff was hired by Defendant as a Senior Programmer in the Business Systems Department.

8. For a period of time in the excess of sixteen years, from January 2, 2003 to January 25, 2019, Plaintiff was a full-time employee of Defendant.

9. Plaintiff was terminated from employment on January 25, 2019 by Ryan M. Earley, Defendant's Vice President of Information Technology.

10. In March 2009, Plaintiff was promoted to Senior Manager, Applications Services. Two years later, in August 2011, Plaintiff was promoted to the position of Senior Manager, Applications Technology reporting to the Director, Infrastructure Services and Operations.

11. On or around November 05, 2017, Plaintiff was promoted to Senior Director of Information Technology, and Plaintiff relocated from Missouri to work at Defendant's corporate office in Chicago, Illinois.

12. Throughout Plaintiff's employment with Defendant, Plaintiff was consistently recognized as a key contributor in enterprise-wide projects and earned multiple awards that were given "on a highly selective basis," which include but not limited to the "Project Completion Award" and the "Special Retention Award."

13. During Plaintiff's tenure with Defendant, her job performance at all relevant times met or exceeded Defendant's legitimate performance expectations.

14. During the course of her tenure, she received positive annual performance reviews.

15. Plaintiff's direct responsibilities were divided between Defendant's corporate offices in Illinois and Arkansas.

16. Plaintiff's supervisor, Ryan Earley, was aware that although Plaintiff had to "manag[e] travel between Chicago and Arkansas for [a] project," her family, including her children, continued residing in St. Louis, Missouri.

17. As a Senior Director, Plaintiff had oversight of a thirty to forty-million-dollar budget and managed fourteen direct reports and over eighty indirect reports. Furthermore, throughout Plaintiff's employment, her managers recognized Plaintiff as an employee who "outperform[ed] [the] business' expectations" while "balanc[ing] a variety of activities."

18. There were only a few visible African American female employees at her management level or above at Defendant organization, and especially true for the IT Department.

19. In April 2018, Defendant selected Plaintiff as its keynote speaker to represent them at the "2018 Woman in IT Conference" at the University of Arkansas, which was a two-day

conference focused on empowering and encouraging women to pursue their passion in the field of technology and technology-related business professions.

20. In December 2018, Plaintiff held a typical, quarterly meeting for her entire employee team. At this meeting, food is typically offered to the employees.

21. Soon after the meeting, she was informed that she was in violation of the recently-announced company policy against holiday parties and gifts.

22. Around the same time, a colleague by the name of Kelly Fulscher, who was the Senior Manager of Trade, and a non-African American woman, also held a similar meeting for employees.

23. Plaintiff's quarterly meeting was attended by her team employees and the Chief Technology Officer (CTO), Scott Spradley.

24. Prior to Plaintiff's termination, there was discussion with Spradley about Plaintiff's potential promotion to a more senior position.

25. Plaintiff was recognized as a manager who "consistently shar[ed] credit and celebrat[ed] her teams' successes, ensuring that the entire team kn[ew] they [were to] be rewarded for good work."

26. Despite Plaintiff's leadership and performance history, subsequent to the meeting, she was informed that there was an investigation related to her violation of the company policy against holiday parties and gifts.

27. One of Defendant's justifications for Plaintiff's termination was that at the December 2018 quarterly meeting, Plaintiff distributed attire with the "Tyson's" company logo.

28. Such attire is typically distributed for marketing purposes. Employees even receive special stipends for this purchase.

29. Plaintiff was subjected to a "random audit," alleged to have violated seventeen company policies, and then abruptly terminated on January 25, 2019 by Ryan Earley, Defendant's Vice President of Information Technology.

30. The termination letter refers to **Standards of Behavior Management Policy** regarding criminal activity:

> - 4.3 Management Team Members who are either arrested or placed under investigation for any job-related offense, whether felony or misdemeanor (emphasis added), will be placed on suspension………For the purposes of this policy, job-related offenses include, but are not limited to, offenses involving theft, fraud, or violence.
>> o 4.3.1 If the Team Member is found guilty, admits guilt, or the Company reasonably believes after its investigation that the Team Member is guilty, with regard to a job-related offense, the Team Member will be disciplined, up to and including termination.

31. The termination letter stated the policy as one she had violated, alleging she engaged in criminal misconduct but failed to provide details on the factual allegations.

32. Plaintiff was not provided records nor further details of the allegations, nor was she provided with an opportunity to respond to or appeal the termination decision.

33. Given Plaintiff's tenure and significant role in contributing to Defendant's business success, it was a reasonable expectation that Plaintiff would have been notified of any policy violations and provided the opportunity to take necessary steps to remedy those issues.

34. However, not once prior to the investigation notice was a concern raised about issues with Plaintiff's travel and expense submissions.

35. At the time of termination, despite the typical practice for management level employees at her level or above, Plaintiff was not provided with a severance agreement.

36. Plaintiff fared worse treatment than other non-African American or non-female similarly situated employees, including management employees.

a. Other non-African American or non-female similarly situated employees, including management employees, did not face discipline for employee food expenses in December or for distributing attire with the "Tyson's" company logo;

b. Other non-African American or non-female similarly situated employees, including management employees, did not face discipline for comparable violations referenced in the termination letter;

c. Other non-African American or non-female employees, including management employees, were not subjected to random audits nor disciplined nor terminated for similar types of travel and expense submissions;

d. Other non-African American or non-female employees, including management employees, were not subjected to criminal language, or unfounded allegations of criminal misconduct, for similar types of violations;

e. Other non-African American or non-female employees, including management employees, upon separation from the company, received severance agreements.

## COUNT I
## TITLE VII DISCRIMINATION BASED ON SEX- TERMINATION

37. Plaintiff realleges paragraphs 1-36 and incorporates the same by reference as though fully set out in this Count I.

38. Plaintiff is an African American female and therefore a member of a protected class pursuant to Title VII.

39. Plaintiff met or exceeded Defendant's legitimate performance expectations at all relevant times throughout her employment.

40. Plaintiff was terminated for allegedly violating travel and expense policies, while other non-female employees in similarly situated positions did not face discipline for comparable violations.

41. Defendant's announced reason for Plaintiff's termination constituted a pretext for unlawful sex discrimination.

42. In terminating Plaintiff's employment, Defendant treated Plaintiff differently than similarly situated non-female employees because the travel and expense policies were inconsistently enforced.

43. The forgoing conduct constituted unlawful sex discrimination in violation of Plaintiff's rights guaranteed under Title VII of the Civil Rights Acts of 1964.

44. The discriminatory conduct of Defendant's agents, including Earley, was intentional and malicious, making punitive or exemplary damages necessary to punish him and deter other management employees in similar positions of authority from like misconduct.

45. Investigatory audits should not be used as discriminatory tools by Defendant's agents, and make punitive or exemplary damages necessary.

46. As a proximate result of the foregoing facts, Plaintiff has suffered the loss of her position, lost wages, the value of lost benefits, incidental damages, pain and suffering in the form of emotional distress, anxiety, embarrassment, humiliation, and loss of status and self-esteem.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court to:

A. Enter judgement finding that Defendant discriminated against Plaintiff on the basis of sex in violation of Title VII;

B. Reinstate Plaintiff to her prior position or a comparable position;

C. Award Plaintiff damages for lost wages and employment benefits that she would have received but for the discriminatory acts and practices of Defendant;

D. Award Plaintiff compensatory and punitive damages in an appropriate amount;

E. Award Plaintiff attorney's fees and all costs and expenses associated with this litigation; and

F. Such other relief as this Court deems just and appropriate.

## COUNT II
## TITLE VII DISCRIMINATION BASED ON RACE - TERMINATION

47. Plaintiff realleges paragraphs 1-36 and incorporates the same by reference as though fully set out in Counts I and II.

48. Plaintiff is an African American female and therefore a member of a protected class pursuant to Title VII.

49. Plaintiff met or exceeded Defendant's legitimate performance expectations at all relevant times throughout her employment.

50. Plaintiff was terminated for allegedly violating travel and expense policies, while other non-African American employees in similarly situated positions did not face discipline for comparable violations.

51. Defendant's announced reason for Plaintiff's termination constituted a pretext for unlawful race discrimination.

52. In terminating Plaintiff's employment, Defendant treated Plaintiff differently than similarly situated non-African American employees because the travel and expense policies were inconsistently enforced.

53. The forgoing conduct constituted unlawful race discrimination in violation of Plaintiff's rights guaranteed under Title VII of the Civil Rights Acts of 1964.

54. The discriminatory conduct of Defendant's agents, including Earley, was intentional and malicious, making punitive or exemplary damages necessary to punish him and deter other management employees in similar positions of authority from like misconduct.

55. Investigatory audits should not be used as discriminatory tools by Defendant's agents, and make punitive or exemplary damages necessary.

56. As a proximate result of the foregoing facts, Plaintiff has suffered the loss of her position, lost wages, the value of lost benefits, incidental damages, pain and suffering in the form of emotional distress, anxiety, embarrassment, humiliation, and loss of status and self-esteem.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court to:

A. Enter judgement finding that Defendant discriminated against Plaintiff on the basis of race in violation of Title VII;

B. Reinstate Plaintiff to her prior position or a comparable position;

C. Award Plaintiff damages for lost wages and employment benefits that she would have received but for the discriminatory acts and practices of Defendant;

D. Award Plaintiff compensatory and punitive damages in an appropriate amount;

E. Award Plaintiff attorney's fees and all costs and expenses associated with this litigation; and

F. Such other relief as this Court deems just and appropriate.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

Respectfully submitted,

ANNITRE EDISON

By: /s/__Jaz Park_____
    Jaz Park
    Attorney for Plaintiff

JAZ PARK
Attorney for Plaintiff
LAW OFFICES
CHICAGO-KENT COLLEGE OF LAW
565 W. Adams Street, Suite 600
Chicago, Illinois 60661
Tel.: (872) 588-0440
Jaz.park@kentlaw.edu
Attorney No: 6302708

RICHARD J. GONZALEZ
Attorney for Plaintiff
LAW OFFICES
CHICAGO-KENT COLLEGE OF LAW
565 West Adams Street, Suite 600
Chicago, Illinois 60661
Tel.: (312) 906-5079
rgonzale@kentlaw.iit.edu
Attorney No: 24155