### UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ANNITRE EDISON, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:20-CV-02484 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| TYSON FOODS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Annitre Edison brought this employment discrimination lawsuit against her former employer, The Hillshire Brands Company.[1] Edison's former role at Hillshire was Senior Director of Information Technology Applications. R. 80, PSOF ¶ 2. Under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, Edison brings two counts of discrimination challenging her firing: in Count 1, a sex-discrimination claim, R. 1, Compl. ¶ 43; and in Count 2, a race-discrimination claim (Edison is Black), *id.* ¶ 53. In response, Hillshire brought counterclaims against Edison for fraud (Count 1); breach of fiduciary duty (Count 2); conversion (Count 3); and unjust enrichment (Count 4), arising out of allegedly unauthorized travel expenses obtained

---

[1]This Court has subject matter jurisdiction over this federal-question case under 28 U.S.C. § 1331. With regard to the precise identity of the corporate Defendant, The Hillshire Brands Company explains in its summary judgment brief that Edison incorrectly identified the defendant as Tyson Foods, Inc.—Tyson is the parent corporation of Hillshire, which is a wholly owned subsidiary. R. 68 at 1 n.1. For simplicity's sake, in light of the corporate entity under which Edison formally worked, the Court will refer to the Defendant as Hillshire.

by Edison and other allegedly unauthorized office expenditures made by Edison. R. 43, Def. Compl. at 18–23, ¶¶ 28–62.

Hillshire now moves for summary judgment in its favor across-the-board against both of Edison's discrimination claims and, as to Hillshire's own counter-claims, specifically on the breach of fiduciary duty and conversion claims. R. 67, Def.'s Mot. Summ. J. For her part, in addition to resisting Hillshire's summary judgment motion on the discrimination claims, Edison cross-moves against all four of the company's counterclaims. R. 77, Pl.'s Mot. Opp. Summ. J. For the reasons discussed in this Opinion, Hillshire's summary judgment motion against the discrimination claims is granted. Hillshire also wins summary judgment in part, specifically winning on its fiduciary-duty and conversion claims as to travel expenses but denied concerning the other office expenses. Edison's own summary judgment motion against the counterclaims is denied.

## I. Background

In deciding a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). For cross-motions, that means that Edison gets the benefit of the doubt when evaluating Hillshire's summary judgment motion, whereas Hillshire gets the benefit of the doubt when considering Edison's cross-motion. The facts below are undisputed unless otherwise noted.

Annitre Edison, an African-American woman, began working with Hillshire in 2003. R. 69, DSOF ¶ 1. Tyson Foods acquired Hillshire in 2014, though Hillshire (as

2

a wholly owned subsidiary of Tyson) formally remained Edison's employer. *Id.* ¶ 3. During the relevant time, Edison was Senior Director of Applications with Hillshire's Information Technology department. *Id.* ¶ 19. Before June 2018, Edison lived in St. Louis, Missouri, with her family, and frequently commuted for work to Chicago, Illinois, as well as to Arkansas. *Id.* ¶¶ 22–23. At the beginning of 2018, Edison was informed that she needed to relocate to Chicago; in March 2018, she received $10,000 for relocation-related expenses; and in June 2018 she did relocate to Chicago. *Id.* ¶¶ 24–26.

The counterclaims in this case arise out of Hillshire's Travel & Entertainment/Expense Reimbursement Procedural Manual. DSOF ¶ 15; R. 78, Pl.'s Exhs., Exh. 5 at 23–37. The expense policy instructs that reimbursement is allowed only if the employee and manager determine that the "expense has a **legitimate** business purpose before incurring and reimbursing expenses, but also that the expense fulfills a **necessary** business objective …." *Id.* ¶ 15 (emphases in original).[2] Whether Edison's expense reimbursement for her travel to St. Louis and for a holiday gathering (or, in Edison's view, quarterly meeting) were proper is in dispute. The Court does note, however, that the only facts that count are those in which the parties' respective Local Rule 56.1 statements accurately cite to the evidentiary record. *See Delapaz v. Richardson*, 634 F.3d 895, 899–900 (7th Cir. 2011) (describing the importance of

---

[2]Edison acknowledges the Manual exists, but that the Travel and Entertainment Reimbursement Policy, not the manual, were explicitly referenced in her termination letter and used throughout her investigation. Pl.'s Resp. DSOF, at 6-7. More on this later in the Opinion.

Local Rule 56.1 and the trial court's entitlement to rely on it). The pertinent facts about the expenses are described in the next subsections.

## A. Holiday Party

In late 2018, Hillshire issued an organization-wide directive that announced that there would be no funding for department holiday parties for that year—if a manager wanted to host a holiday party, then the manager would have to pay out of her own pocket. DSOF ¶¶ 29–30. During a staff meeting, Edison's supervisor, Ryan Earley, also communicated the holiday-party directive to his direct reports, and Edison was present at this meeting. *Id.* ¶ 30. Edison does admit that this directive was in fact delivered. R. 80, PSOF ¶ 23.

Hillshire alleges that, on December 11, 2018, Edison hosted a "holiday party" in the Chicago office and that she directed her administrative assistant, Beverly Hayes, to charge over $300 in holiday-party-related expenses to the department's purchasing credit card. DSOF ¶ 31. To support this assertion, Hillshire cites to both Edison's and Hayes' deposition testimony, as well as to receipts of the credit-card purchases. *Id.* ¶ 31; R. 71-1, DSOF Exh. A at 2–46, Edison Dep.; R. 71-7, DSOF Exh. G at 2–23, Hayes Dep.; DSOF Exh. G at 30–31, Receipts. Scott Spradley, Earley's supervisor, also testified in his deposition that Edison hosted a social gathering at a local restaurant in Chicago and that this too might have been charged to the corporate credit card. DSOF ¶ 35; R. 71-4, DSOF Exh. D at 2–25, Spradley Dep. 67:5–11.

Edison refutes this characterization of the December 11 gathering, instead likening the meeting to her typical quarterly meetings. During her deposition, Edison

4

testified that she held a quarterly meeting for her entire team the day before, that is, on December 10, 2018. PSOF ¶ 24; R. 82, Pl.'s Exhs. at 651–715, Edison Dep. 99:13–17. She also explained that it was typical for her to provide food for employees at quarterly meetings. PSOF ¶ 24; Edison Dep. 98–103, 111–13. With regard to December 11 (the date of the expenditures), Edison testified that the "quarterly meeting" continued on that day—with food—because not all of the team members could attend the meeting on the previous day. PSOF ¶ 24; Edison Dep. 109:15–112:13. In her deposition testimony, Edison distinguished the December 11 meeting from a holiday event, which in Edison's view would be "something big" and that they would go offsite to a "restaurant and have all the grandiose things." PSOF ¶ 25; Edison Dep. 104:3–20.

## B. Travel Expenses

As noted earlier, Edison was required, in early 2018, to relocate from St. Louis to Chicago for her job with Hillshire. DSOF ¶ 24. Her plan was to move to Chicago by herself, and then eventually move her partner and children later. *Id.* In June 2018, Edison moved to Chicago, but after relocating, she flew to St. Louis nearly every weekend to see her family. *Id.* ¶¶ 26–27. Hillshire conducted an internal investigation of the reimbursements for these flights; Anthony Merryman, at the time a Director in Internal Audit, let the investigation. *Id.* ¶¶ 41, 44; R. 71-3, DSOF Exh. C at 2–7, Merryman Decl. ¶¶ 2, 6. Merryman found that Edison had obtained reimbursements for 40 flights between Chicago and St. Louis; had purchased two plane tickets for the same flight between Chicago and St. Louis; had incurred 33 charges for

parking at the St. Louis parking lot; and obtained reimbursement for 70 meals. DSOF ¶ 67; Merryman Decl. ¶ 23. Merryman concluded that all of those trips were not for business purposes. *Id.*. According to Hillshire, as a result of these findings, Earley (Edison's supervisor) decided to fire Edison. DSOF ¶ 56. Hillshire relies on Merryman's affidavit and Earley's deposition testimony to support its position on the reason for firing Edison. *See* Merryman Decl.; R. 71-5, DSOF Exh. E at 2–8, Earley Dep. 154–55, 158–59.

Edison does not dispute that she incurred those charges and obtained reimbursement, but she does dispute that the flights were personal trips. Pl.'s Resp. DSOF ¶ 28. But Edison's only specific factual response as to these trips is that her supervisor was aware of the travel or "should have been aware it was at the company's expense." Pl.'s Resp. DSOF ¶¶ 46, 51. In June 2020, Hillshire demanded payment of $19,885.22 from Edison for the improper reimbursements. DSOF ¶ 63. Based on further investigation of the expenses during discovery, Hillshire now asserts that Edison owes at least $15,228.58 for improper reimbursements. DSOF ¶ 67.

## II. Standard of Review

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences

in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Vill. of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

In deciding cross-motions for summary judgment, the Court views the facts in the light most favorable to the respective non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). So when the Court evaluates Hillshire's summary judgment motion, Edison gets the benefit of reasonable inferences; conversely, when evaluating Edison's motion, the Court gives Hillshire the benefit of reasonable inferences.

### III. Analysis

### A. Title VII Discrimination

Edison claims that Hillshire discriminated against her based on her race and gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, when she was fired in early January 2019. Compl. ¶¶ 1, 29. As a practical

7

matter, there are two methods of evaluating a plaintiff's claims of discrimination at the summary judgment stage.

The first way was established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), in which the Supreme Court set forth the now-familiar *prima facie* framework for evaluating a plaintiff's disparate-treatment claims. As an initial step, Edison must establish a *prima facie* case that Hillshire discriminated against her based on her race and gender. *McDonnell Douglas*, 411 U.S. at 802. If she can do so, then the burden shifts to the Hillshire to offer a legitimate, nondiscriminatory reason for its actions. *Id.*; *see also Carson v. Lake Cty., Ind.*, 865 F.3d 526, 533 (7th Cir. 2017). If the employer meets that burden, then Edison must show that the reason is pretextual, that is, it is a cover-up of a discriminatory motive. *McDonnell Douglas*, 411 U.S. at 804. In this case, however, Edison does not make it that far. Edison fails to establish a prima facie case because, even viewing the evidence in her favor and giving her the benefit of reasonable inferences, Edison was not meeting Hillshire's legitimate job expectations and she can offer no comparators from which to infer discrimination.

### 1. Prima Facie Case

To establish a prima facie case of discrimination under *McDonnell Douglas*, Edison must show (viewing the evidence in her favor) that she: "(1) is a member of a protected class, (2) she was meeting the defendant's legitimate expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees who were not members of her protected class were treated more favorably." *Carson*, 865

8

F.3d at 533 (cleaned up). There is no dispute as to the first and third elements. Edison is a member of a protected class in terms of her gender and race. DSOF ¶ 1; Pl.'s Resp. DSOF ¶ 1. Edison also experienced an adverse employment action, because she was fired from her job. DSOF ¶ 56; PSOF ¶ 62. *See Chaudhry v. Nucor Steel-Ind.*, 546 F.3d 832, 838 (7th Cir. 2008) (cleaned up) (a "cognizable adverse employment action is a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.").

For the second element, however, Edison cannot establish that she was meeting Hillshire's legitimate expectations, even considering the evidence in her favor and giving her the benefit of reasonable inferences. To be sure, if legitimate expectations were tied only to work performance on core job duties, then Edison would be able to satisfy the legitimate-expectations element. Indeed, taking the facts in the light most favorable to Edison, she has established in the record that she performed well in her capacity as a Senior Director of IT. PSOF ¶ 7; R. 82, Pl.'s Exhs. at 281–304, Exh. 25, Edison Performance Reviews. But legitimate expectations can and do go beyond the narrower expectations of core job duties. An employer may validly expect that employees will comply with work policies outside of performance of core job duties. *See Oates v. Discovery Zone*, 116 F.3d 1161, 1171 (7th Cir. 1997) ("[A]n employee's 'performance' is not necessarily confined to an appraisal of his or her substantive work."). In *Oates*, the court found the plaintiff was not meeting his employer's legitimate expectations due to his failure to follow attendance reporting procedures. *Id.* at 1164.

No one disputes, for example, that an employer can enforce a work policy that pro-hibits physical violence against co-workers, no matter how well the attacker other-wise performs job duties.

Here, Hillshire's policies concerning expense reimbursements and the holiday-party directive are legitimate expectations and, if violated, would represent Edison falling short on the expectations element of the prima facie case. DSOF ¶ 15. Even taking the facts in the light most favorable to Edison, the record reflects that she in fact violated those policies and that Edison has not raised a genuine issue to under-mine the conclusion that Hillshire supervisors genuinely believed that she did violate those policies. DSOF ¶¶ 31–32. Edison's responses do not call into question the *gen-uineness* of Hillshire's conclusion that she violated the policies. On the holiday-party funding, Edison herself might very well believe that she could extend, so to speak, what she thought was a quarterly meeting into a second day and provide food in that context. PSOF ¶¶ 23–24. But that does not undermine the genuineness of Hillshire's conclusion that in fact Edison had charged the company for a holiday party, especially given (1) the charging of gift bags for the gathering and (2) the resistance of Edison's administrative assistant, Beverly Hayes, to making the charges in light of the holi-day-party directive. DSOF ¶¶ 31, 33–34.

The same goes for the near-weekly St. Louis flights to visit her family. DSOF ¶¶ 27, 50–51. Edison's only response to the impropriety is that her supervisor, Earley, continued to approve the expense reports—but she concedes that she did not actually ask him whether she could charge the weekend trips to the company. Pl.'s Resp.

DSOF ¶¶ 46, 51. In these circumstances, even viewing the evidence in Edison's favor, the genuineness of Hillshire's conclusion that Edison improperly was reimbursed for flights to visit her family is not reasonably called into question. *See Gates v. Caterpillar, Inc.*, 513 F.3d 680, 689 (7th Cir. 2008) ("The proper inquiry mandates looking at the employee's job performance through the eyes of her supervisors at the time of her … termination."). "[I]t is not the role of the court to determine whether an employer's expectations were fair, prudent, or reasonable. So long as its management decision was not a guise for a discriminatory purpose, we must respect that decision." *Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016) (cleaned up). To be sure, it is possible for an employer's interpretation of a policy, or the application of a policy to a set of facts, to be so unreasonable that the genuineness of the employer's explanation is called into question, especially when viewing evidence in the light most favorable to the employee. But that is not the case here. Edison has fallen short of offering enough evidence on the legitimate-expectations element.

For the sake of completeness on the prima facie framework, Edison has also failed to show that non-Black, similarly situated employees were treated more favorably than her. As potential comparators, Edison presents two employees who were investigated for violation of the company's expense policy but were not fired. R. 81, Pl.'s Resp. at 23. But neither employee is a valid comparator. The parties refer to the two proffered comparators by their initials, so the Court will too. First, D.M. (a White male) was not fired after an investigation showed that his improper reimbursement submissions were inadvertent *and* he reclassified the expenses as personal before

11

receiving reimbursement. DSOF ¶ 60 (table entry for D.M.). Second, K.C. (a White female) was not fired after an investigation found that the expenses at issue were in fact business related. *Id.* Edison simply proffers those two comparators without undermining Hillshire's explanation of the circumstances that distinguished those two from her. *See* PSOF ¶ 74.[3] This element too has not been established by sufficient evidence.[4]

In sum, even viewing the evidence in the light most favorable to Edison, she has failed to establish a prima facie case. Edison did not meet the company's legitimate expectations and failed to present a suitable comparator to show that she received unfavorable treatment when compared to others.

## 2. Pretext

Even if Edison had successfully established a prima facie case, she would have to show that the legitimate, nondiscriminatory reason offered by Hillshire (the violations of the reimbursement policy) was pretextual. *David v. Bd. of Tr. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 225 (7th Cir. 2017). For the sake of completeness, the Court will explain why Edison did not offer enough evidence of pretext. To show

---

[3]On the Court's own initiative, on review of K.C.'s comparator file, there is a record that does say that there was a "one way ticket from Las Vegas to San Diego. Both leader and the team member could not provide additional insight for that charge. All other charges were approved." It is possible that Edison could have raised this point, but she did not include this fact in her Rule 56.1 statement; plus, as it appears (at least on the face of the document) that K.C. was not actually reimbursed for this unexplained flight. R. 82, Pl.'s Exhs, Exh. 22 at 3.

[4]Hillshire also offers evidence of White-male employees whom Hillshire did fire for reimbursement violations. Def.'s Br. at 17. But there is no need to sift through this evidence because Edison has failed to show that there were similarly situated comparators who were treated better than her.

pretext, Edison "must demonstrate that the proffered reason is a lie or completely lacks a factual basis—she cannot merely argue that the presented reasons were "mistaken, ill considered, or foolish. *Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir. 2000) (cleaned up). Hillshire asserts that Edison was fired because of the violations of the expense reimbursement policy. Def.'s Br. at 1. Edison's efforts to show otherwise fall short.

Edison's first argument is that her supervisor, Ryan Earley, was only identified as the decisionmaker for her firing to "buffer liability for the members of the Internal Governance Committee," which suspiciously labelled her conduct as criminal and relied on Merryman's investigation, which allegedly did not follow typical protocols. Pl.'s Resp. at 10. Edison also points to the disparate incarceration rates of Black women as compared to White women. Pl.'s Resp. at 12.

It is of course true that if an employer's internal investigation deviates from company policy or standard investigative procedures, then those departures from the norm might be evidence of pretext. But Edison's criticisms of the investigation do not reasonably call the investigation into question. Edison first complains that Merryman did not interview witnesses. Pl.'s Resp. at 15. But Merryman did review hundreds of pages of records on Edison's spending and, crucially, interviewed Edison and her supervisor, Ryan Earley. *See Merryman Decl*. Nor does Edison identify how witness interviews would have helped her plight. It is not as if interviews of more witnesses would have changed the admissions made by Edison that she took the St. Louis trips for personal reasons or changed her explanation of the extended quarterly meeting

13

(or filled in the gap in explanation of why gift bags were charged to the company). Indeed, if anything, the deposition of Beverly Hayes (Edison's administrative assistant) during discovery made the holiday-party violation all the clearer. DSOF ¶ 34.

Second, Edison complains that the investigation was "unfettered and without any checks." Pl.'s Resp. at 16. In a discourse without citations to the Rule 56.1 Statement of Facts, Edison's response brief is laden with conclusions like the termination procedure "was handled with blatant disregard for disciplinary process." *Id.* But these contentions are not backed up by specific facts that call into question the validity of the investigation, especially given the leeway that employers have to conduct investigations into misconduct. Again, sometimes employers do engage in sham investigations and a reasonable jury can find an investigation is just a pretext for discrimination. But that is not borne out by the evidence in this case.

### 3. Overall Circumstantial Evidence

Moving on from the *McDonnell Douglas* prima facie framework, there is a second way for an employment discrimination claim to survive a summary judgment motion. To avoid the straitjacket of the prima face framework, which might screen out valid claims of discrimination, at the summary judgment stage the Court must consider *all* relevant evidence "as a whole." *Ortiz v. Werner Enter., Inc.*, 834 F.3d 760, 765 (7th Cir. 2017). Even absent a *McDonnell Douglas* prima facie case, Edison can still defeat summary judgment if she offers enough circumstantial evidence that would allow a reasonable jury to find that she was the victim of discrimination. *Id.*; *David*, 846 F.3d at224. The ultimate question is "whether the evidence would permit

14

a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz*, 834 F.3d at765. For the reasons discussed next, however, the claims here do not survive summary judgment even on this overall examination of the circumstantial evidence.

Relying on *Ortiz*, Edison offers the following circumstantial evidence. First, Edison argues that her then-supervisor, Ryan Earley, was himself performing poorly and was "negligent in his supervisory review of Plaintiff's expenses." Pl.'s Resp. at 25. Indeed, Edison argues, the supervisor of comparator employee V.J. (the supervisor's initials are B.S.) was also disciplined, so Earley too should have been disciplined. Pl.'s Resp. at 25; PSOF ¶ 17. Second, Edison also relies on Hayes's observation that she believed it was "possible" that race and sex were factors holding Edison back. Pl.'s Resp Br. at 25.

These pieces of evidence, even when viewed in combination and in Edison's favor, do not raise a reasonable inference of discrimination. That Earley was treated differently from the supervisor of another policy-violating employee is not evidence that *Edison* was discriminated against. Nor had Edison supplied enough facts to understand why V.J.'s and B.S.'s factual circumstances were the same as hers. With regard to Hayes' observation, Edison does not offer any *facts* to support what amounts to speculation. It would be one thing if Hayes had personal knowledge of facts from which discrimination could be reasonably inferred, or if Hayes had heard party-

15

admissions for supervisors. But that is not what Edison offers; she offers only Hayes' conclusory speculation.

All in all, the circumstantial evidence does not undermine Hillshire's proffered explanation that Edison improperly obtained reimbursement for personal travel and spent company funds on a holiday party despite a directive against it. A reasonable trier of fact could only find that Hillshire genuinely believed that Edison violated those policies. *See Harper v. C.R. England, Inc.*, 687 F.3d 297, 311 (7th Cir. 2012) ("In determining whether an employer's stated reason is pretextual, the question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reason it has offered to explain the discharge.") (cleaned up). Edison has presented insufficient evidence that her race or gender was the reason behind her firing. Hillshire's summary judgment motions are granted against the discrimination claims.

## B. Counterclaims

Next up are Hillshire's counterclaims. Hillshire moves for summary judgment in its favor on two of the four counterclaims, namely, breach of fiduciary duty and conversion. R. 68, Def.'s Br. at 10. Edison does not directly respond to Hillshire's motion, but she does move for summary judgment in her favor against all four of the counterclaims (fraud, breach of fiduciary duty, unjust enrichment, and conversion). Pl.'s Resp. at 26. The Court reviews the four claims split into the two categories of alleged reimbursement violations: (1) travel expenses and (2) the December 2018 meeting.

16

### 1. Travel Expenses

### a. Fiduciary Duty & Conversion

To establish a breach of fiduciary duty under Illinois law, Hillshire must show that (1) Edison owed a fiduciary duty to the company; (2) Edison breached that duty; and (3) Edison's breach proximately caused damages to Hillshire. *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 709 (7th Cir. 2010). Here, there is no dispute that Edison, as a relatively high-level executive, owed a fiduciary duty to Hillshire. DSOF ¶ 65; Pl.'s Resp. DSOF ¶ 65. Nor is there any genuine dispute that Edison sought reimbursement for St. Louis expenses totaling $15,228.58. DSOF ¶ 67; Pl.'s Resp. DSOF ¶ 67 (denying the 56.1 paragraph only by arguing that "she did not believe that her expense practices were in violation of policy").

Even taking the facts in the light most favorable to Edison, she has offered no reason to believe that the flights to and from St. Louis, as well as the corresponding expenses, parking tickets, and meals during those trips, qualified as a legitimate business purpose. There simply is no evidence against that conclusion, and thus no evidence rebutting the breach of fiduciary duty. No reasonable jury could find otherwise. So summary judgment is granted in Hillshire's favor on the fiduciary-duty claim as it relates to the travel expenses. And of course that means that Edison's corresponding cross-motion against this counterclaim is denied.

Moving on to the conversion counterclaim, in order to establish conversion, Hillshire must show that the company (1) had a right to the property at issue; (2) had an absolute and unconditional right to immediate possession of the property; (3) made

a demand for possession; and (4) Edison wrongfully and without authorization assumed control, dominion, or ownership over the property. *Cirrincione v. Johnson*, 703 N.E.2d 67, 70 (Ill. 1998). Again, as just explained, Edison's travel to and from St. Louis are indisputably violations of the company's reimbursement policy. Edison wrongfully and without authorization obtained reimbursement for personal expenses, and the money was paid to Edison on the condition that the expense-reimbursement complied with Hillshire's expense and entertainment reimbursement policy. DSOF ¶ 15. Hillshire demanded payment for the reimbursements on June 17, 2020. DSOF ¶ 63. Edison's continued control of the property (that is, the money from the reimbursements) is improper. So here too, even when viewing the evidence in Edison's favor, Hillshire is entitled to summary judgment in the amount of $15,228.58. DSOF ¶ 67. Though of course this damages award is recoverable only once and there can be no double recovery on both the fiduciary-duty claim and the conversion claim. (Naturally, given Hillshire's victory on the conversion claim, Edison's cross-motion against it is denied.)

### b. Fraud & Unjust Enrichment

On the fraud and unjust-enrichment counterclaims, remember that Hillshire did not move for summary judgment on those counterclaims (the restraint is not surprising given the state-of-mind requirements of those claims). Instead, Edison cross-moves for summary judgment against the two counterclaims. Illinois common law fraud requires Hillshire to show that Edison made (1) a false statement of material fact; (2) known or believed by Edison to be false when made; (3) with the intent to

induce action by Hillshire; (4) and which did in fact induce action resulting in damages. *Association Ben. Serv., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 847 (7th Cir. 2007). Given the clarity of the company's reimbursement policy, and given the personal reason for the St. Louis trips, there is sufficient evidence, when viewing the record in Hillshire's favor, for a reasonable jury to find all of those elements. This includes Edison's fraudulent intent in seeking the reimbursements for her travel expenses. Taking the facts in the light most favorable to Hillshire, the reimbursement rules were clear and the seeking of reimbursement for personal expenses was rather obviously in violation of the policy. To be sure, at a trial, when Hillshire bears the burden of proof, a jury might very well conclude that Edison did not have fraudulent intent. But at the summary judgment stage, Edison cannot prevail given the standard of review in favor of Hillshire.

For the unjust-enrichment claim, Hillshire must show that Edison unjustly retained a benefit to the company's detriment, and that Edison's retention violated the fundamental principles of justice, equity, and good conscience. *LincolnWay Cmty. Bank v. Allianz Life Ins. Co. of North America*, 2013 WL 5212750 (N.D. Ill. 2013). Here again the clarity of the reimbursement policy and the personal nature of the St. Louis trips can be relied on by a jury to reasonably conclude that Edison unjustly enriched herself. Edison's contentions that these expenses were in furtherance of legitimate business goals because she was working excessive hours and making up for her manager's "inadequate performance," Pl.'s Resp. at 29, do not at all explain how her trips to St. Louis and corresponding expenses were anything but personal. Taking

19

the evidence in the light most favorable to Hillshire, Edison's summary judgment motion against this claim must be denied.

## 2. Holiday Party / Quarterly Meeting

Circling back to Hillshire's summary judgment motion in favor of its fiduciary-duty counterclaim and conversion counterclaim, the company does fall short in seeking victory on those claims for the holiday-party expenses. Edison has raised enough of a question—though barely—on the characteristics of the December 11, 2018 meeting. Specifically, whether the gathering was a holiday party (Hillshire's view) or an extended quarterly meeting (Edison's view) is sufficiently in dispute to prevent Hillshire from winning on this aspect of the counterclaims outright. If the gathering was an extension of the quarterly meeting, then Edison has raised enough of a question (at least as to the food and drink) against a violation of the policy. The Court hastens to add that, as to the underlying discrimination claims, it is worth remembering that Hillshire need only *genuinely* believe that Edison violated the no-funding directive as to the holiday party, and the record readily establishes that belief. But it is another thing—though the difference is subtle—to hold that no jury could reasonably find that the quarterly-meeting-extension explanation is plausible. So Hillshire's summary judgment motion on the fiduciary-duty and conversion counterclaims as to the meeting expenses is denied.

But neither does Edison win in seeking summary judgment against those counterclaims as they relate to the meeting expenses. For all the reasons previously discussed, a jury could reasonably find that Edison breached her fiduciary duty, engaged

in conversion of funds, committed fraud, or unjustly enriched herself by seeking company funds for the gathering. The directive delivered to Edison (and all Hillshire employees) banning the use of company funds was explicit and delivered to Edison close in time to the reimbursement. And the gift-bags expenditure calls into question the entirety of Edison's explanation as well. The four counterclaims remain intact as to the meeting-expense reimbursement.

## IV. Conclusion

Hillshire's summary judgment motion against the Title VII discrimination claims is granted; those claims are dismissed. Hillshire also prevails on the counterclaims for breach of fiduciary duty and conversion as to the travel expenses, specifically in the amount of $15,228.58. But Hillshire's summary judgment motion as to the expenses related to the December 11 gathering is denied. Edison's motion for summary judgment on all four of Hillshire's counterclaims is denied.

With this decision on the summary judgment motions, the parties shall engage in settlement negotiations. It might very well be appropriate for both sides to simply walk away at this point, rather than (from Edison's standpoint) face a judgment against her on the counterclaims and (from Hillshire's standpoint) pursue a full-blown trial to recover the December 11 expenses, and (from both sides' standpoint) continue to litigate through an appeal, with all its attendant risk, delay, and expense. The tracking status hearing of April 8, 2022, is reset to April 29, 2022, at 8:30 a.m., but to track the case only (no appearance is required). Instead, the parties shall file

21

a joint status report on settlement discussions and the proposed next step of the case by April 20, 2022.

ENTERED:


<u>      s/Edmond E. Chang      </u>
Honorable Edmond E. Chang
United States District Judge

DATE: March 30, 2022